Case 23-3480, Brian Tessanne et al. v. Childrens Hospital Medical Center of Akron Argument not to exceed 15 minutes per side. Mr. Mendenhall, you may proceed for the appellate May it please the court, my name is Warner Mendenhall and I represent Brian Tessanne and Richard Breimer who are putative class representatives for hundreds of employees at the Akron Children's Hospital and I would like to reserve five minutes for rebuttal. Never in the history of the United States have we had a nationwide mandate for an experimental genetic intervention that we have here, which they call a vaccine. And the the issue in this case fundamentally is whether Akron Children's Hospital acted as a state actor in implementing this mandate for the experimental shot. The district court found no grounds whatsoever for Akron Children's Hospital to be found as a state actor and instead said it lacked subject matter jurisdiction over this. We recognize that we have the burden of proof in this matter to show that Akron Children's Hospital was a state actor, but we never got there because of the stance at which this was dismissed without discovery under 12b-1 because the court claimed it lacks subject jurisdiction. The court in finding that made inferences from the facts that we were not alleging in our case. The first of those first of those inferences was that Akron Children's Hospital did this on its own, that it was an independent mandate and that, oh, had the stay that was pending at the Supreme Court at the time continued, that our clients still would have been fired. We don't know that. We could find that through discovery, but by the time our clients were fired in February, the stay had been lifted and the mandate had ensued. So we want to explore that issue as in terms of what the Akron Children's Hospital understood and and whether it would have kept the people employed had the had the stay been continued by the U.S. Supreme Court. The second... I'm having trouble figuring out why that makes any difference, particularly under Sirachi. Well, I think Sirachi is a very, very different case. And I do think that these mandates and the state actor probably has has to have an evaluation of the degree of coercion that was involved. With the Smucker's case, with the Sirachi case, they're a federal contract. It was approximately 10 to 15 percent of their revenue in any given year. In this case, we have a Medicare and Medicaid billing problem, because if the hospitals, any hospital, fails to be able to bill Medicare or Medicaid, they're out of business the next day. What are you saying? There was more coercion here than in Sirachi? Absolutely. Yeah, this business would have failed. Are there any cases that measure the degree of coercion as you're framing it? I think there are cases that show that we have to weigh and sift the facts. And I would point to, I believe it's the Butler case, the parking lot case with the restaurant. And the court there said we have to weigh and sift the facts. We never got a chance to weigh and sift the facts in this case. We never got a chance to see what communications were going on between the federal government and Akron Children's Hospital. We just saw this week with the Supreme Court how much involvement the federal government had with social media groups. How much did it have with this hospital? But in that case, the plaintiffs weren't trying to say that this, trying to sue the social media groups. They were trying to sue the government. I understand the point, Your Honor, and I think we could have sued the government as well. But the point is that Akron Children's Hospital is standing in the shoes of the federal government. They are a state actor. That is our point. So they are equally eligible for a lawsuit as the federal government if they're standing in the shoes. Are you saying that merely, I mean including Srirachi, which is pretty directly on point, saying that merely complying with a federal mandate doesn't make you a federal actor? That is true. That is how it is. If the law is written as this, they comply with the mandate. There was more going on here, though. There was a threat to the budget of the hospital. There was guidance that was issued by CMS. But if you don't comply with the law, there are always sanctions for not complying with the law. There could be civil penalties. There could be threats of, you know, if it's a criminal law, you could face criminal liability. I understand that. What we are alleging in our complaint is there is more than just compliance with the law here. It reached down to CMS guidance, threats to the budget, and possibly other communications as we've seen in these other cases. I didn't see any reference to any at least written material that coerces the hospital into denying exemptions. As a matter of fact, the regulation or the mandate said you have to mandate masks, but you have to give them an option to get an exemption. You're correct, Your Honor. So you're not really complaining about the mandate. You're complaining about how the hospital implemented the mandate in terms of whether your clients got First Amendment exemptions. No. Your Honor, respectfully, there's the mandate. But then there's guidance, and they are expecting, CMS said it's expecting, and we cite that in the brief to the website, they're expecting 100% compliance. And that's apparently what this hospital did, because it fired all these employees. When they didn't get the shot, it fired them. So CMS indicated 100% compliance, meaning you either get the vaccine or you're granted an exemption. I'm just struggling to find something that says anything different than that. No, Your Honor. They expected 100% compliance, and they said they would have... Compliance with what? Compliance with the vaccine mandate. But the vaccine mandate includes an exemption. So I think Judge McKeek's point is either compliance would include either getting the vaccine or getting an exemption. I do not believe that's the case. They expected 100% compliance with the vaccines. They had an exception that they had in there, and we do address that a bit. It said you could have an accommodation. The mandate itself, though, did not say reasonable accommodation, as we understand it under Title VII. It said an accommodation. We believe that the coercion was such that the hospital did not want to make any accommodations, and that that is actually part of the First Amendment violation of our client's religious beliefs. I'm sorry. The statement, is that just your belief, or were you citing something else at the beginning of that sentence? We have a citation in the brief to the CMS mandate that says that it has an expectation of 100% compliance. Okay. We've already argued about what the 100% means. This is not something new. That's what I was clear on. Let me just ask you. You may not have noticed, but yesterday, this circuit issued an opinion in a somewhat similar case, but that was brought under Title VII. Was there any reason that you didn't sue under Title VII for religious discrimination? Your Honor, we really want the court to understand that the hospital is standing in the shoes of the federal government, and we want rulings on that to establish what state action is about. We have proceeded with Title VII cases with at least four employees right now against the hospital, so they would no longer be in the class at this point. But we have proceeded with Title VII.  And I mean, I will tell you, we're getting some discovery that's very interesting in those Title VII cases that we believe bolster this case. By the way, I did read this. I believe it's the Savelle decision. Right. I did notice that, Your Honor. Thank you. And the reason that I was paying attention there was the issue of injury. You know, we do show injury. We show that it's traceable right back to Akron Children's Hospital and its attempt to comply with the expectation of 100 percent by the mandates. And we do think it's redressable. There are a number of cases that say that the case has to be redressable, and that's an issue here. Well, which of your claims are redressable? So you have a claim for injunctive relief, declaratory relief, a claim for reinstatement. Yes.  It's the reinstatement claim, Your Honor. And honestly, after reading through the Bivens and some of the other cases, I think that's what we have is that it's a prospective relief of reinstatement. That is the relief that we are requesting at this point. So you want reinstatement. I understand that. But what about your claim that when you get reinstated, you need an exemption from the mandate? I mean, there isn't a mandate anymore. It's been repealed. So isn't that claim moot? You know, the mootness issue has been dealt with a lot recently by the Supreme Court. I believe it was dealt with a little bit this week. But, you know, we do believe that these types of mandates that are coming out, and the way this is being coerced through CMS is a repeatable issue. In fact, we're seeing it in the military right now in flu vaccine mandates. So, you know, we do believe this can be repeated. So we would argue against mootness and would ask the court to recognize that. Are you saying that in general, the allegedly coercive conduct by CMS overall could be repeated? Or are you saying there's some prospect that this particular mandate could be reimposed? It may not be this particular mandate, but it could be another similar mandate in terms of vaccination. We have never had... How do you have standing for that? I'm sorry, Your Honor? How do you have standing to challenge something that hasn't happened, that you can't even really define with any specificity? But we can define it, Your Honor. They're claiming that this is a vaccine mandate. We expect that there will be other vaccine mandates that are emanating out of CMS. And they will continue to use the coercive power of the Medicare and Medicaid billings to force the institutions to mandate similar types of vaccinations or injections. What do you base your expectation on? Well, right now, there are 50 vaccines that are based on the mRNA platform under development right now. We have... We believe that what's going on in the military with the flu vaccine is the same thing. And we believe that those types of mandates will extend to these other vaccines that are coming down the pike, Your Honor.  Any further questions? All right. I see your time is up. Thank you. You'll have your rebuttal. Good afternoon, Your Honors. May it please the Court. Nick Olesky on behalf of the hospital. I heard my friend on the other side make an important concession during his argument. And that is that I think he's conceding that he lacks standing to pursue everything but arguably a claim for reinstatement. I don't think he has standing to pursue the claim for reinstatement. I'd point the Court to its decision in Savage v. Gee, a case involving a university professor who terminated. He had a request for reinstatement. The Court held that he lacked standing. But even if the plaintiffs had... Just out of curiosity, you really only have to read the newspaper to see that hospitals, like many other employers, are really struggling for a lot of different reasons, not the least of which is getting enough people to work in the hospital. Have any of these folks sought reinstatement, particularly once the mandate was revoked by CMS? Not to my knowledge. There's nothing in the record suggesting that they've ever requested reinstatement other than a paragraph in their complaint where they suggest that they want reinstatement. Does the hospital still impose the mandate even though not required to by CMS? No. Although, admittedly, that's outside the record. But no, there's no longer any vaccine mandate at the hospital. But this case, if you get to the merits, this case begins and ends with Searcy. Searcy is directly on point here. In that case, just like in this case, there was a federal mandate mandating that federal contractors vaccinate their employees or grant religious exemptions or health exemptions to the mandate. This Court held that the plaintiff's allegations, most of which are the same allegations that they're making here, don't make out any test for state action. And most of what is in the plaintiff's brief, most of what my friend argued today, is not in the complaint. There's no allegation in the complaint about any communications between the hospital and the federal government. There's no allegation in the complaint about the amount of funding the hospital receives from the federal government. In fact, the plaintiffs don't even allege in the complaint that the hospital receives any funding from Medicare or Medicaid. There's nothing in the complaint, nothing in the record, supporting the statements that my colleague is making. So I don't think this is a case... So I think this case begins and ends with Searcy. I think the Court can look at Searcy. It's a published decision from this Court. The plaintiffs, neither in their appellate brief or their reply brief, do very much to distinguish Searcy. The only thing they say is, well... In their reply brief, they say, well, the NFIBC v. Sebelius case, that shows that somehow Searcy is distinguishable. But the NFIB v. Sebelius case, has nothing to do with the test for state action. It has nothing to do with that. So, the District Court here dismissed the claim under 12b.1, thinking that it lacked jurisdiction. Do you think that's right? Or do you think it's a 12b.6, failure to state a claim? I think my better argument is under 12b.6, as opposed to 12b.1. However, candidly, I think part of the problem is the way the plaintiffs have pled their case. They pled it as a single count for declaratory judgment, alleging that the hospital violated the First Amendment. And, as this Court knows, the Declaratory Judgment Act does not create a cause of action. There's no cause of action that exists for declaratory relief. There's got to be some other tie, some other right to relief. And I think that's what the District Court was struggling with, is that the plaintiffs don't have a right to relief under the First Amendment. And so, ultimately, to some extent, I think the District Court found that the jurisdictional issue, whether the Court had subject matter jurisdiction, was intertwined with the merits issue. Do the plaintiffs have a claim? And the judge ultimately concluded that the plaintiffs don't state a valid First Amendment claim, and therefore he lacked subject matter jurisdiction. As we pointed out in our... There are all kinds of cases where, ultimately, somebody's held not to have satisfied an element of the claim. It doesn't mean the Court doesn't have jurisdiction. I agree. I think the distinction here that the District Court was making is that in order to have a claim for declaratory relief, in order for the claim to arise under federal law, there has to be some cause of action that gives the plaintiffs the right to sue. And the District Judge didn't find that here. However, as I explained to Judge Larson, I think my better argument is under 12b-6, for the same reasons that Circe held that the plaintiffs' claims failed to state a claim for relief. And we asked the judge below... We moved to dismiss the complaint under 12b-1 and 12b-6. The judge held that our 12b-6 motion was moot because he lacked subject matter jurisdiction. This Court, of course, can affirm on any ground that was raised below. And if this Court thinks that the District Court had subject matter jurisdiction, I'd ask the Court to reach the 12b-6 issue. It's teed up, it was teed up in the District Court, it was teed up in our appellate brief, and for this Court to affirm on alternate grounds, and then remanded the District Court to dismiss the plaintiff's complaint with prejudice. At any stage of that process, did the plaintiffs lack the ability to respond to your 12b-6 motion? No. Our motion was a joint motion under 12b-1 and 12b-6. Our motion is Record 9. In the first page of our motion, we requested that the District Court dismiss the plaintiff's complaint under Rules 12b-6 and 12b-1. We made the arguments in the motion under both 12b-6 and 12b-1, and the plaintiffs certainly had the opportunity to respond to our motion. They opposed it. They also had the opportunity, if they wanted, to amend their complaint to address our arguments, or file a motion, as they're supposed to do, asking for leave to amend. Instead, all the plaintiffs did in a single sentence of their opposition brief, they said, if you think our complaint is deficient for any reason, we'd like leave to amend. There's no grounds here. The District Judge did not abuse his discretion in denying leave to amend. I'd like to go back to the last thing you were just talking about. If we thought you were correct and we were going to affirm on 12b-6 grounds, then do we have to remand because the District Court dismissed the complaint without prejudice, and then we would allow the District Court to decide whether it was with or without prejudice? Or do we do it ourselves? I think you would remand to the District Judge with instructions to dismiss the complaint with prejudice. We cited some case law in our appellate brief that says that a dismissal with prejudice is the standard remedy for 12b-6. I don't think this Court can dismiss the complaint with prejudice. I think the Court would have to remand for the District Judge to issue a new judgment entry. I'm not going to oppose the Court doing that. As I indicated earlier, I think the Judge lacks subject matter jurisdiction, but I acknowledge that my better argument is under 12b-6. If this Court agrees, then I would ask the Court to reach that issue, affirm on alternate grounds, and remand with instructions to dismiss with prejudice. Is it your understanding that the underlying claim here is basically a Bivens action? Yes. Essentially, they're seeking damages. That's what the Court in Searcy flagged that issue. It was unclear to that Court whether an injunctive claim for reinstatement Reinstatement is an equitable claim, so it's not really a claim for damages. Although it has aspects of a claim seeking damages, plaintiffs would ask for this in their complaint, they would seek back pay. A reinstatement is more than just a prohibitory injunction. A prohibitory injunction is typically subject to Bivens. That's what I think the Court was explaining or at least flagging in Searcy. It's unclear whether and certainly the plaintiffs here haven't cited any cases suggesting otherwise. It's unclear whether there is such an action for mandatory injunctive relief under Bivens. That's essentially what the plaintiffs here are asking the Court to do, to create a constitutional tort. There's no basis under Bivens to do that. Again, I don't think the Court needs to reach that issue. I think Searcy disposes of the plaintiff's claims at the outset and I don't think the Court needs to get that far. I think the Court would only get there if the Court found that the hospital was a federal actor and I don't think that there's anything in the record that suggests that the hospital is a federal actor. The plaintiff's complaint is relatively bare bones. I think there's basically three paragraphs of the complaint that references how the federal government allegedly coerced the hospital into acting and they're largely conclusory allegations and none of the allegations that my friend was making are in his complaint. The Supreme Court seems to have been pretty clear lately that expanding Bivens is disfavored in their mind. Are you aware of any cases where at least the United States Supreme Court has included the First Amendment as a part of Bivens? No. How about the Sixth Circuit? There are a lot of circuits that have interpreted Bivens to go beyond just 4, 5, and 8. I'm not aware of any case from this circuit that says that a Bivens action is appropriate in a First Amendment case. My friends haven't cited one either. My understanding from Bivens is that the Supreme Court itself has only recognized the Bivens cause of action under the Fourth Amendment and as Your Honor indicated has recently and repeatedly indicated that extending Bivens outside of the specific context in which Bivens arose is disfavored. I do want to briefly turn my friend cited the CMS guidance briefly both in his appellate brief and in his argument here today. His argument is factually wrong. The guidance that he's referencing and that's cited in both of our briefs requires the hospital to either vaccinate its employees or grant them religious exemptions. It's a 6 page document that both of us cited in our appellate brief. Page 4 of that document makes it abundantly clear that when CMS is referencing a 100% vaccination rate it's referencing either the employees being vaccinated or having been granted an exemption. The CMS guidance and the CMS rule that's at issue here, which has since been repealed required the hospital to either vaccinate its employees or grant them religious exemptions. As Circe indicated the fact that we've allegedly exercised our discretion to grant the exemption stingily, that doesn't make out a case for state action. So we'd ask the court to affirm the district court's judgment, either affirm the district court's judgment in its entirety or affirm on alternate grounds and remand with instructions for the judge to dismiss with prejudice. So unless there are further questions, I yield the remainder of my time. We agree about the Bivens issue but we think we fall outside of Bivens and we cited three cases within this circuit about prospective relief. Tipler, it was Carton and Doster v. Kendall in 2022 that reinstatement can be prospective relief. All three of those are out of this court. The one, Tipler, going back to 1971. So we will hang our hat on that issue that the prospective reinforcement is the relief that we're requesting at this time. So is it essentially an Ex parte Young argument? Your Honor, I am not sure I know what you mean about the Ex parte Young. That's how you avoid sovereign immunity, basically. You sue the individual for prospective injunctive relief. Yeah, well, we're suing the institution for prospective injunctive relief and we believe that's a proper remedy for this behavior. Srirachi, again, I want to distinguish But essentially, by doing so, it's still promised on a violation of the First Amendment, right? Yes. So, as we all know, there aren't implied rights of action other than those that have been recognized by the Supreme Court and Bivens happens to be in that narrow little category. So how do you avoid the broader doctrine of you've got to have a statute? Well, we believe that the Constitution is enforceable under the rules of this court and it is the Declaratory Judgment Act plus and what's the plus? It's the threats and the coercion that were made and the other... The threats and the coercion have to be in violation of something and in this case, you're saying they're in violation of your client's First Amendment rights.  Have any of the cases that you relied upon been based on the First Amendment? I want to correct something, Your Honor. The threat is against the hospital. The hospital is what's under threat. They then in turn threatened our clients but it's the hospital that's under threat to lose its ability to do business. That's the extent of this. I stated earlier that I think there is a matter of degree. Isn't it strange, though, that if the federal government holds a gun to the head of the hospital and says, I want you to religiously persecute your clients so that's what the government has done that you can hold the hospital liable and not the government? Normally they're the ones under... You'd think they're the ones under duress. Again, Your Honor, I think that they're forced to stand in the shoes of the federal government. Then why are they liable? Should they get qualified immunity? Why? They didn't have a choice. On your theory, they're so coerced that they had no choice. So they are the government. They take the government's liabilities but not its immunities? It just seems strange. I'm looking for help with this puzzle. We need the courts to make it very clear that the government should not be behaving this way where it can end corporate existence through threats and coercion. That's what we need this court to do. So why didn't you sue the government? They're the bad actor. As I explained earlier, Your Honor, and many people have sued the government over this. In fact, Missouri v. Biden was the CMS mandate. By the way, in the dissent in that case, four of the justices, I believe, in the way they wrote that opinion, said that this is coercive behavior by the federal government against these institutions. I think the hospital had a remedy. The hospital should have stood up for what its rights were to not be coerced, to not be threatened. It should have stood up for its employees, which it didn't do. Because it chose not to do that and fold to the threats, then I think it does create liability, at least to the extent that these employees should have the right to reinstatement. And there was a question. Outside of the record, there are employees that have requested reinstatement. But you agree that your only claim now is reinstatement? Because you can't get an injunction saying, you can't get a prospective injunction. I mean, you didn't even file your complaint until after they'd been filed. So you can only get backward-looking relief. Within this case, I can only get prospective relief with the reinstatement. If you call reinstatement prospective, I mean, I get it. It's sort of backward-looking, sort of forward-looking. You really didn't answer Judge Larson's question. Is this prospective or retroactive, whatever you want to call it, reinstatement, is that the only relief you're still pursuing? Well, Your Honor, I think what can happen that I saw in the case law is that once this court declares that this violation has occurred, it does open the door for the clients to get relief, potentially through another case, based on the declaration of this court. So that is open. We're talking about what you're seeking by way of relief in this case. Not filing another case, not another mandate for some other reason down the road, all the things that you've, the parade of horrors you've cited. We're just talking about this case. But I think it goes beyond this, because the case law shows that courts have recognized that once the declaratory judgment is entered, then the clients can march off with that declaratory judgment and they may have other relief. In this case, it's prospective. The relief that you're asking for in this case, is that limited to reinstatement? Yes. Thank you. I see my time is up. Is there any more questions? Thank you.